IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE CRISTOBAL CARDONA, | : Civil No. 3:14-cv-624 |
| Petitioner | : (Judge Mariani) |
| v. | : |
| WARDEN D. ZICKEFOOSE, | : |
| Respondent | : |

## **MEMORANDUM**

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Jose Cristobal Cardona, an inmate currently confined at the United States Penitentiary, Big Sandy, in Inez, Kentucky. (Doc. 1). Named as the sole Respondent is Warden D. Zickefoose. Cardona contends that his due process rights were violated in the context of a disciplinary hearing held at the United States Penitentiary, in Lewisburg, Pennsylvania ("USP-Lewisburg"). The petition is ripe for disposition and, for the reasons that follow, will be denied.

I. **Background**

On February 21, 2003, Cardona was sentenced in the United States District Court for the Western District of Texas to a 480-month term of imprisonment for conspiracy of possession with intent to deliver marijuana/heroin, and possession of marijuana/heroin with intent to deliver. (Doc. 6-1, Declaration of Dominick DeSanto, BOP Paralegal Specialist ("DeSanto Decl."), p. 4, ¶ 3). His projected release date is February 22, 2037, via good

conduct time. (*Id.*).

On February 21, 2013, while incarcerated at USP-Lewisburg, Cardona was charged in incident report number 2412438 with possession of a hazardous tool and possession of anything not authorized, in violation of Federal Bureau of Prisons ("BOP") Prohibited Acts Code Sections 108 and 305. (Doc. 6-1, p. 15). A disciplinary hearing was held and the disciplinary hearing officer ("DHO") ultimately found that Cardona committed the prohibited act of possession of anything not authorized, and sanctioned him with fourteen days disallowance of good conduct time, fifteen days of disciplinary segregation, and ninety days loss of commissary, telephone, and visiting privileges. (Doc. 6-1, p. 16).

In the instant habeas petition, Cardona claims that the incident report failed "to identify the items belonging to a specific individual cell occupant and/or the location the items were found." (Doc. 1, p. 2). Cardona further asserts that the DHO "was very rude and unprofessional," refused to entertain his defense, and failed to establish that Cardona had control over the items or knowledge that the items were altered. (*Id.* at pp. 2-3). Lastly, Cardona alleges that the alleged tattoo needle appeared to be a plastic ball point pen refill which is available at the commissary, the rule applied to the plastic ball-point pen is too vague, and the most serious violation of code 108 was expunged, which raises questions of retaliation. (*Id.* at pp. 3-4). For relief, Cardona seeks to "be discharged from the illegal restraint complained of in this petition." (*Id.* at p. 4).

## II.     Discussion

On February 21, 2013, Cardona was served with incident report number 2412438 charging him with a code 108 violation for possession of a hazardous tool and a code 305 violation for possession of anything not authorized. (Doc. 6-1, DeSanto Decl. ¶ 5; Doc. 6-1, Ex. 1, Attach. 1). The incident report describes the incident as follows:

> On the above date and time this reporting officer was conducting a shakedown of cell 204 in E-blk. While conducting the search there was a tattoo needle found inside of a book. And a tattoo motor found inside of a radio. The cell houses both inmate Miranda #11675-280 and inmate Cardona #40869-080.

(Doc. 6-1, p. 15, Incident Report).

On February 21, 2013, Lieutenant J. Foura gave Cardona advanced written notice of the charges against him. (*Id.*). During the investigation, Cardona was advised of his right to remain silent, he stated that he understood his rights, and had no comment regarding the charges. (*Id.* at p. 16). Cardona did not request to call any witnesses. (*Id.*). At the conclusion of the investigation, the lieutenant determined that the report was properly written, the inmate was appropriately charged, and he referred the incident report to the Unit Discipline Committee ("UDC") for further disposition. (*Id.*).

On February 22, 2013, Cardona appeared before the UDC and did not provide statement to the UDC. (*Id.* at p. 15). The UDC referred the incident report to the DHO due to the seriousness of the charge, and recommended that maximum sanctions be imposed if

Cardona was found guilty. (*Id.*).

On February 22, 2013, a staff member provided Cardona with a copy of the "Inmate Rights at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at pp. 18, 20). Cardona refused to sign for his copies of the forms. (*Id.*). Cardona did not elect to have a staff representative, and chose not to call any witnesses at the hearing. (*Id.* at pp. 20).

On March 14, 2013, Cardona appeared for a hearing before DHO A. Jordan. (Doc. 6-1, pp. 22-24, DHO Report). During the March 14, 2013 DHO hearing, the DHO confirmed that Cardona received advanced written notice of the charges on February 21, 2013, and that he had been advised of his rights before the DHO on February 22, 2013. (*Id.* at p. 22). The DHO again advised Cardona of his rights, and Cardona indicated that he understood his rights. (*Id.*). Cardona waived his right to a staff representative and did not request to call any witnesses. (*Id.*). Cardona made the following statement regarding the charges:

> Inmate Cardona acknowledged he understood his rights before the DHO and was ready to proceed with the hearing. Inmate Cardona presented no documents for the DHO to consider. Inmate Cardona testified that Section 11 of the incident report is not accurate. Inmate Cardona testified, I didn't know anything about it. Inmate Cardona made no complaints of procedural errors during the hearing.

(*Id.*).

Based on the evidence presented at the hearing, the DHO found that Cardona committed the prohibited act of possession of anything not authorized. (*Id.* at p. 24). In

4

arriving at this conclusion, the DHO stated the following:

> The DHO finds you committed the prohibited act Code 305, Possession of Anything not Authorized, while incarcerated at USP Lewisburg on 02-21-2013.
>
> The DHO relied on the written report of T. Crawford, wherein he reports on 02-21-2013 at 12:00 pm, he was conducting a shakedown of cell 204 in E-Block. While conducting the search, there was a tattoo needle found inside of a book, and a tattoo motor found inside of a radio. The cell houses both you and inmate Miranda 11675-280.
>
> The DHO also relied on the Photograph of the contraband, recognized by the DHO as a tattoo needle found inside of a book and a tattoo motor discovered inside of an altered radio, which were in your control.
>
> You denied the charge, and presented as your defense that you did not know anything about the contraband. The DHO gave greater weight to the reporting officer's written statement that, he discovered contraband to include a tattoo needle and a tattoo motor in your cell, than to your claim you did not know anything about the contraband in your cell.
>
> This is based on the fact [t]he contraband was found in your cell, therefore the contraband was in your control; The search was routine, or random; The items that were discovered in your control were fashioned into contraband, as they were altered from their original intended use, making the items you possessed contraband; The tattoo motor and the tattoo needle are not authorized to be retained by you, as they are not issued to you in their altered state, through regular channels; you have submitted no information to support your claim that you were unaware of the contraband which was found in your control.
>
> Your contention about not having knowledge of everything in your room was found without merit by the DHO. Since you are assigned to the cell in which the contraband was found, you are responsible for keeping your living quarters free of contraband. Furthermore, the reporting officer clearly states that he found the tattoo needle and the tattoo motor in your cell, leaving no evidence to convince this DHO this contraband belonged to anyone other

than yourself.

Accordingly, the DHO finds the greater weight of the evidence supports you violated Code 305, Possession of Anything not Authorized, of the Inmate Discipline Policy.

(*Id.* at pp. 23-24).

In rendering his decision, the DHO considered the incident report and investigation, and a photograph of the contraband, recognized by the DHO as a tattoo needle found inside of a book and a tattoo motor discovered inside of an altered radio, which were in Cardona's control. After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Cardona committed the prohibited act of possession of anything not authorized. (*Id.* at p. 24). As such, the DHO imposed the following sanctions: fourteen days disallowance of good conduct time, fifteen days of disciplinary segregation, and ninety days loss of commissary, telephone, and visiting privileges. (*Id.*). The DHO documented his reasons for the sanctions given as follows:

> Possession of any unauthorized, or contraband, items in a correctional institution inherently jeopardizes the security and good order of the institution. Items are not authorized for retention by inmates, or identified as contraband, based on the fact that these items present a risk to the security and orderly operation of the correctional institution. Moreover, possessing contraband in correctional institutions also results in inmates engaging in multiple other prohibited acts in order to traffic the contraband within the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that

6

> engaging in misconduct will prolong inmate Cardona's period of incarceration. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

(*Id.*). At the conclusion of the hearing, Cardona was advised of his appeal rights. (*Id.*).

Cardona's sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.*

When a DHO hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive the following due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; (3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; (4) an impartial tribunal; and (5) a written statement

7

by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564-572. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose

minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the instant case, it is clear that Cardona was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Cardona presented no documents, declined a staff representative, and declined to call any witnesses. At the conclusion of the hearing, Cardona received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Cardona was also notified of his right to appeal.

Since Cardona was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to

allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. The DHO relied upon the incident report of T. Crawford indicating that a tattoo needle and tattoo motor were found inside Cardona's cell. He considered Cardona's denial of the charge. The DHO also relied upon a photograph of the contraband, recognized by the DHO as a tattoo needle found inside of a book and a tattoo motor discovered inside of an altered radio, which were in Cardona's control. Cardona presented no documentary evidence for the DHO to consider. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Cardona was found guilty of a 300-level, moderate severity level prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 300-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 3 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.

    I.    Loss of job.
    J.    Impound inmate's personal property.
    K.    Confiscate contraband.
    L.    Restrict to quarters.
    M.    Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 2412438.

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order will issue.

Date: November 14, 2016

Robert D. Mariani
United States District Judge